[No. 2393-1.    Division One.    March 17, 1975.]

RICHARD FREEMAN, *Appellant*, v. METRO TRANSMISSION, INC.,
*et al., Respondents.*

*Stock & Welch, Inc., P.S.,* and *Eugene A. Stock,* for appellant.

*Terry P. Watkins,* for respondents.

FARRIS, J.—Richard Freeman appeals from a trial court decision denying him recovery against Lacey Bonding & Insurance, Inc., for damage done to his automobile while it was in the possession of Metro Transmission, Inc., d/b/a Lee Myles Transmissions. Freeman acknowledges that he delivered the automobile to Metro for repairs but argues

that his subsequent delivery of the certificate of title to Lacey created a second bailment, which made Lacey liable for the damage to the automobile, although Lacey never took actual possession of the vehicle. We affirm.

On August 26, 1970, Freeman took his 1965 customized Ford Galaxie, valued at approximately $6,500, to Metro for minor repair work which was to take approximately 3 days. Later that same day, Freeman was arrested in Everett, Washington, and the following day, Lacey issued a bail bond for his release after receiving from Freeman the bond premium and the endorsed title to the automobile. Lacey thereafter informed Metro that Freeman was no longer the title holder of the automobile and that it should not be delivered to Freeman without the permission of Lacey. Lacey also made inquiry of Metro regarding its security and insurance coverage. In addition, arrangements were made to store the automobile at Metro at Freeman's expense until he was able to substitute cash collateral for the automobile.

Before the repair work was completed, the automobile was vandalized and stripped. Neither Freeman nor Lacey were advised of this occurrence until a week following the incident. On September 10, 1970, Freeman, accompanied by an agent of Lacey, went to Metro and demanded the return of the vehicle in its delivery condition. Metro was unable to comply. Several days later, Metro's president placed the vehicle on blocks in the street near his home where it remained until December 21, 1971, when it was retrieved by Freeman. Its value at the time was $1,500.

Freeman was granted judgment of $8,077 in his action against Metro for damages. His appeal is from the adverse decision of the court in his action against Lacey and is based on the theory that his transfer of the automobile's title to Lacey as security for the bail bond created a bailment which obligated Lacey to return the vehicle in the same condition as it was when the title was delivered. He also argues that Lacey, in any event, is liable for damage to the automobile which occurred between the time that it

was placed on blocks and left on the street until such time as it was retrieved.

Three questions are presented by the appeal: (1) Was the Freeman to Lacey transaction a bailment, (2) if so, what standard of care did Lacey owe as bailee, and (3) if that standard has been violated, what damages should Freeman recover from Lacey?

A bailment arises generally when personalty is delivered to another for some particular purpose with an express or implied contract to redeliver when the purpose has been fulfilled. *Earhart v. Callan*, 221 F.2d 160 (9th Cir. 1955). Freeman argues that a bailment of his automobile was created when he delivered the vehicle's certificate of title to Lacey as security for a bail bond until alternate security could be provided. His theory is that he constructively delivered the automobile to Lacey when he tendered the title certificate and that Lacey is responsible for the automobile even though it never possessed the vehicle. We do not agree.

■ The transaction is primarily a security transaction; Freeman's delivery of the certificate of title to Lacey creates in Lacey a pledge interest in the certificate and the underlying collateral, the automobile. Restatement of Security § 2(2) (1941). While delivery of the certificate of title to Lacey creates a bailment in that certificate, *see* Restatement of Security §§ 1, 5 (1941), it does not necessarily follow that there is a bailment of the automobile.

■ Before a bailment of the automobile can be said to exist

> there must be a change of possession and an assumption or acceptance of possession by the person claimed to be a bailee. *Theobald v. Satterthwaite*, 30 Wn.2d 92, 190 P.2d 714, 1 A.L.R.2d 799 (1948); *Ramsden v. Grimshaw, supra* [23 Wn.2d 864, 162 P.2d 901 (1945)]; *see* R. Brown, The Law of Personal Property §§ 74, 75 (2d ed. 1955); 8 Am. Jur. 2d *Bailments* § 54 (1963); Annot., 7 A.L.R.3d 927, § 3 (1966). Whether there is a change or acceptance of possession depends on whether there is a change or acceptance of actual or potential control in fact over the sub-

ject matter. Such control may be actual or physical, or it may be constructive—recognized by law as the equivalent of actual control. In determining whether control exists, it is relevant to consider the subject matter's amenability to control, steps taken to effect control, the existence of power over the subject matter, the existence of power to exclude others from control, and the intention with which the acts in relation to the subject matter are performed.

*Collins v. Boeing Co.,* 4 Wn. App. 705, 711, 483 P.2d 1282, 46 A.L.R.3d 1294 (1971). *See* Annot., 1 A.L.R. 394 (1919). Constructive delivery can be accomplished by a written transfer of title to the bailed property, Annot., 1 A.L.R. 394 (1919) and cases cited in n.15, but whether such delivery effectively creates a bailment is a question of fact. *Collins v. Boeing Co., supra; see also Irish & Swartz Stores v. First Nat'l Bank,* 220 Ore. 362, 349 P.2d 814 (1960).

The trial court's oral opinion reflects its finding that Lacey was not intended to become bailee of the vehicle until the repairs ordered by Freeman at Metro had been completed and the automobile put into Lacey's care. (The court did not deem relevant the fact that once the vehicle was repaired, Lacey intended to store it with Metro.) There is substantial evidence in the record to support the finding which supports the trial court's holding that no bailment existed at the time the vehicle was stripped.

■ Even if the record had established that a bailment was created by the delivery of the certificate of title, it does not necessarily follow that Lacey is responsible for the loss. Where the bailed property remains with an independent agent or employee of the bailor, there is a corresponding limitation on the bailment and the duty of the bailee. *Sisung v. Tiger Pass Shipyard Co.,* 303 F.2d 318 (5th Cir. 1962); *Stegemann v. Miami Beach Boat Slips, Inc.,* 213 F.2d 561 (5th Cir. 1954). Likewise,

The pledgee owes to the pledgor the duty of reasonable care of the pledged chattel *except where the chattel is in the possession of a third person designated by the pled-*

*gor or is in the possession of the pledgor himself. Comment:*

 *a.* The rule of reasonable care expressed in this Section is confined to the physical care of the chattel, whether an object such as a horse or piece of jewelry, or a negotiable instrument or document of title.

(Italics ours.) Restatement of Security § 17, at 65 (1941). The pledged property while awaiting repair at Metro was in the possession of a "third person designated by the pledgor" and thus the trial court's finding that Metro, not Lacey, violated the standard of reasonable care is supported by law even if the record supported Freeman's theory that a bailment arose from the delivery of the certificate of title.

 ■ We do not agree with Freeman's argument that Lacey is responsible for such loss as may have occurred to the vehicle following his delivery of substitute security to Lacey. The automobile remained at all times in the custody of Metro, the agent to whom it was delivered by Freeman. When his certificate of title was returned, Freeman's right to exercise absolute control over the vehicle was restored. The record fails to establish that Lacey breached any obligation owed to Freeman.

 Affirmed.

 JAMES and CALLOW, JJ., concur.