[No. 7579-9-I. Division One. March 31, 1980.]

ALLSTATE INSURANCE COMPANY, *Respondent*, v. STEVEN E. NEEL, ET AL, *Appellants.*

*Curtis G. Johnson* and *Johnson & Williams,* for appellants.

*Edward S. Winskill* and *Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson,* for respondent.

WILLIAMS, J.—Allstate Insurance Company brought this action for a declaratory judgment against its insureds, the Neels, alleging the Neels' automobile liability insurance policy did not provide coverage for an accident in which their son, Steven, was involved. Allstate moved for summary judgment which was granted. The Neels appeal; we affirm.

The facts are these: On July 23, 1978, Steven Neel was driving a 1973 Jeep when it collided with another vehicle. The other driver and his passenger brought suit against Steven and his parents for damages.

The Jeep was not one of the automobiles described as an insured vehicle under the policy nor was Steven Neel a named insured. As a relative residing in his parents' home, though, Steven was insured with respect to his use of the "owned" or any "nonowned" automobile. As defined in the policy, an owned vehicle must be owned by the named insured; a nonowned vehicle cannot be owned by a resident of the named insured's household. On summary judgment, the trial court concluded that Steven Neel was the owner of the Jeep. Consequently, the policy did not provide coverage for the accident because the Jeep was neither an owned nor a nonowned automobile.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In opposition to the motion for summary judgment, Mrs. Neel testified by affidavit that:

As regards to the 1973 Jeep, that vehicle was *purchased by our son,* Steven from a private party. I wrote the down payment and Steve was to pay us back. I was a co-signer on the title, so that our interest would be protected.

(Italics ours.) In support of the motion, Allstate set forth deposition testimony of Mrs. Neel and Steven substantiating her affidavit. Thus, there is no dispute that Steven Neel was the purchaser of the Jeep. The question is whether he was the owner as that term is used in the policy.

██ The interpretation of a written contract is a question of law for the court. When the only dispute relates to the legal effect of language in a written contract, summary judgment is proper. *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970). The relationship between the parties to an insurance contract is a personal one. The intention of the insurer and the insured control the coverage provided, and, as with other written contracts, that intention is to be determined from the language of the contract viewed against the setting in which it is formed. *Continental Volvo, Inc. v. Ross,* 17 Wn. App. 316, 562 P.2d 1002 (1977). The terms of the policy must be understood in their plain, ordinary, and popular sense. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976).

The Neels argue that because they advanced the down payment and cosigned the title, they had an insurable interest in the Jeep which amounts to "ownership" under the insurance policy. We disagree.

██ The insurance policy refers to ownership, not an insurable interest. Whether the Neels could have insured the Jeep is not material to the question whether their insurance policy in fact covered it. The Neels loaned their son money for a down payment; the relationship was that

of creditor and debtor. *See National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 495 P.2d 332 (1972). As testified to by Mrs. Neel, she cosigned the title in order to protect their right to repayment of the loan, creating a security interest. RCW 62A.1–201(37). We find no cases and the Neels cite none in which, by itself, a security interest in an automobile has been held to constitute "ownership" for purposes of an automobile liability insurance policy. Nor does a reading of the policy as a whole show the term was intended by the parties to encompass an ordinary security interest.

Moreover, although standard dictionary definitions of words are not controlling, they are generally accepted as the common meaning. *Jack v. Standard Marine Ins. Co.,* 33 Wn.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426 (1949). "Own" is defined in *Webster's Third New International Dictionary* at 1612 (1969) as "to have or hold as property or appurtenance : have a rightful title to, whether legal or natural : POSSESS." The Neels offered no evidence that the Jeep was in their possession or under their control nor did they assert a right to title as owners. The Jeep was simply an automobile purchased by the son of the named insured and never itself insured. Nothing in the policy extends coverage to a resident relative who acquires his own car with respect to that car.

We do not reach the Neels' remaining contentions because of the result on this issue.

The judgment is affirmed.

CALLOW, C.J., and RINGOLD, J., concur.