[No. 49046-5. En Banc. October 13, 1983.]

TERRENCE W. KELLY, *Petitioner,* v. AETNA CASUALTY & SURETY COMPANY, *Respondent.*

STAFFORD, J., did not participate in the disposition of this case.

*Morrow, Longfelder, Tinker & Kidman, Inc., P.S.,* by *Kerry D. Kidman,* for petitioner.

*Randall & Danskin,* by *Robert T. Carter,* for respondent.

ROSELLINI, J.—Petitioner, Terrence Kelly, seeks recovery under the terms of an umbrella policy issued by respondent, Aetna Casualty and Surety Company. The trial court dismissed petitioner's contract action, holding that no coverage was provided by the underlying automobile liability policy or the umbrella policy. The Court of Appeals affirmed. We granted review and now affirm the Court of Appeals.

This coverage dispute arose under the terms of two policies issued to Dr. George Schneider. The first policy was a general automobile liability policy through United Services Automobile Association (USAA). The policy insured Dr. Schneider against damages arising out of the ownership or use of an owned automobile. That policy defined owned automobile as follows:

> (a) a private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded, [or]
>
> . . .
>
> (c) a private passenger . . . automobile ownership of which is acquired by the named insured during the policy period, provided
>
> . . .
>
> (2) the company insured all private passenger . . . automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, . . .

Clerk's Papers, at 307. As is typical with most such policies, the declaration page of the policy listed vehicles that were specifically insured. On the day of the accident, the vehicle involved was not listed as an owned vehicle.

Dr. Schneider's second policy was an umbrella policy issued by respondent Aetna Casualty and Surety Company (Aetna). This policy applied only to losses in excess of the USAA policy limits. Its policy limit was $1 million. It included as insured "any person . . . while using an automobile . . . owned by . . . the named insured with permission of the named insured". Clerk's Papers, at 295. The policy issued by Aetna did not define the term "ownership".

The present dispute concerns coverage for an accident occurring on April 14, 1973. On that day, petitioner was injured while a passenger in a car driven by Dr. Schneider's 21-year-old son, Kenneth.

The accident vehicle's title certificate mistakenly listed Dr. George Schneider as both the registered and legal owner of the vehicle, although the evidence tended to establish that the car was owned by Kenneth. The circumstances surrounding the purchase of the vehicle are as follows:

The accident vehicle was purchased in March 1973. At the time, Kenneth was emancipated and involved in divorce proceedings. Lacking the money to purchase a car, Kenneth asked his father to finance it. Dr. Schneider agreed, obtained a personal loan and Kenneth selected his car. Dr. Schneider described the arrangement:

> Our mutual intent was that the automobile was to be Kenneth M. Schneider's, that I was making this purchase of it possible by taking the loan for the purchase price, and that he would repay me for all payments I made upon the loan, upon the same basis that I paid the loan at the bank. It was intended that Kenneth M. Schneider should show as registered owner on the title certificate, and that I should show on the title also as "legal owner", and should physically hold the title certificate, to give me security for Kenneth M. Schneider's reimbursement to

me of the loan payments.

It was intended that Kenneth M. Schneider should insure the automobile, and he agreed to do so. Prior to the purchase I told him that he should do so, and he answered that he was arranging it. A week or two after the purchase I asked him whether he had done so, and he indicated that .he had seen someone concerning it but that he had not done it yet. Prior to the accident I did nothing to have this automobile of Kenneth M. Schneider's placed under the protection of my own automobile insurance policy, which was issued by United Services Automobile Association, of San Antonio, Texas, since I then presumed that Kenneth M. Schneider would obtain his own insurance as agreed.

Clerk's Papers, at 111–12.

Several weeks later, the vehicle was involved in the accident which injured petitioner. Kenneth had not obtained insurance for the car.

Petitioner brought a personal injury action against Kenneth and Dr. George Schneider. Dr. Schneider obtained dismissal on summary judgment, apparently arguing that he had no control over the vehicle. His affidavit submitted in conjunction with the summary judgment motion stated:

At all times it was understood and agreed between myself and Kenneth M. Schneider that the automobile described herein was owned by him and was his own automobile for his own use and enjoyment and that I had no control over his use of it.

Clerk's Papers, at 113.

Following the accident, Dr. Schneider's attorney contacted USAA and arranged for Kenneth's vehicle to be added to the policy retroactive to before the accident.

The case proceeded to trial and petitioner obtained a judgment of $848,028 against Kenneth. Since Dr. Schneider was dismissed from the action, no personal judgment was entered against him or his wife. Nonetheless, USAA paid its full policy limits of $100,000 to the plaintiff.

Petitioner then brought the instant action against Aetna to recover the remaining $748,028 pursuant to the umbrella policy. Aetna denied coverage, arguing that the car was not

owned by Dr. Schneider and therefore Kenneth Schneider was not covered under the terms of the policy. Both parties moved for summary judgment. The trial court granted Aetna's motion and dismissed the case. Petitioner appealed, the Court of Appeals affirmed and we granted review. We hold that neither policy provided coverage and affirm for the reasons set out in the unpublished decision of the Court of Appeals (*Kelly v. Aetna Cas. & Sur. Co.*, noted at 32 Wn. App. 1025 (1982)), as well as those discussed below.

As noted above, Aetna's umbrella policy provides personal liability coverage for Dr. Schneider *and* "any person . . . using an automobile . . . owned by, loaned to, or hired for use by or on behalf of the named insured." Clerk's Papers, at 295. Since there is no judgment against Dr. Schneider, the petitioner is entitled to recover only if he succeeds in placing Kenneth Schneider under the terms of the policy by application of the above clause. To do so, he must establish that the accident vehicle was owned by Dr. Schneider. Therein lies the problem.

Petitioner advances several arguments to support his contention that the 1968 Dodge was "owned" by Dr. Schneider. His basic argument is that USAA's decision to add the vehicle to the policy and pay its policy limits binds Aetna.[1] To support this contention, petitioner produced affidavits of several individuals who work in the insurance industry, two of whom were employed by the Washington State Insurance Commissioner. These affidavits described an insurance industry standard under which umbrella policies are construed at least as broadly as the underlying policy.

Petitioner refers to this concept of reading an umbrella

---

[1]Petitioner refers to this decision as an underwriting decision. This analysis confuses two distinct terms. An underwriting decision is a business decision on the part of an insurer, to assume a risk of an accident in return for a given premium. When an accident occurs, the decision to pay a claim arising from that accident does not involve an evaluation of risk or underwriting decision. Postaccident decisions are claims decisions. These functions are distinct and frequently handled by separate departments.

policy in light of the policy provision contained in the underlying automobile policy as meshing. Petitioner cites no authority for this proposition but insists that this is because the concept is so well accepted in the insurance industry that it has never been questioned.

Petitioner's argument fails because no coverage was available under *either* policy. Although USAA paid its policy limits, this decision was not contractually required. As evident by the clause quoted above, USAA agreed to provide coverage for permissive drivers who were driving vehicles owned by the named insured. Here, there is no question as to Kenneth Schneider's having permission to drive the car. The only issue then is, what is an owned vehicle for purposes of this clause? Two decisions were relied upon by the Court of Appeals to resolve this question. The first case, *Beatty v. Western Pac. Ins. Co.*, 74 Wn.2d 530, 445 P.2d 325 (1968), involved a conditional sale arrangement. The insured, Eugene Sutliff, agreed to sell his car to a Mr. Scott. Scott put $35 down toward the purchase price and agreed to pay the remaining $40 in 2 weeks. Mr. Sutliff insisted that he retain the title and the certificate of registration until he received the remaining money. During the 2-week period, Sutliff retained the vehicle on his insurance policy. Several days after this transaction, the Scotts were involved in an accident. The injured party sought recovery under Sutliff's policy, arguing that the vehicle was still owned by Sutliff and that the use of the vehicle was with his permission. The court, in rejecting this argument, focused on the possession of the vehicle. It observed

> that where possession of the automobile has been transferred pursuant to the conditional sales agreement, the conditional vendor no longer owns the vehicle in such a sense as will enable him to give or withhold his consent to the use of the vehicle by the vendee, and that the vendor retains title for security purposes rather than for purposes of dominion over the vendee's possession and use of the car.

*Beatty*, at 540.

The same result was reached in facts virtually identical to those here in *Allstate Ins. Co. v. Neel*, 25 Wn. App. 722, 612 P.2d 6 (1980). *Neel* involved the question of whether a primary insurer was obligated to provide coverage for a vehicle under a clause similar to the one quoted above. The vehicle involved in the accident was owned by the insureds' son. The parents provided the down payment and cosigned the title to protect their interests. The Court of Appeals found that the issue of coverage was a question of law, that summary judgment was proper when the only issue was the legal effect of a written contract and that the vehicle was not "owned" by the insureds. The court thus affirmed summary judgment in the insurer's favor.

Petitioner challenges these decisions on the ground that they were not decided with the benefit of expert testimony concerning industry custom and trade usage. He urges, therefore, that summary judgment was improper because his offered testimony created a material issue of fact. To adopt petitioner's position would be to depart from the general rule that interpretations of contracts are questions of law. *See Allstate Ins. Co. v. Neel, supra*. We decline to do so.

In addition, our interpretation of the term "owner" is consistent with the general meaning of the term in insurance contracts. As noted in 12 G. Couch, *Insurance* § 45.372 (1982), the term "owner" includes only persons who are able to give the requisite permission for the vehicle's use and have the right and power to control it. Here, Dr. Schneider testified that he was only listed as legal owner to secure his interest in the car. A person in this position is not an "owner" for the purpose of granting permission. *See* G. Couch, at 381.

Furthermore, this interpretation of the policy is supported by sound policy considerations involving the ability of insurers to limit their risk. It is well recognized that an insurer has the right to limit risks. This concept was most recently reaffirmed in *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209, 643 P.2d 441 (1982).

There, we observed:

> An insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums, such as the use of a vehicle by an unauthorized driver.

The provision cited here goes directly to the risk assumed by insurer. *See generally Beatty v. Western Pac. Ins. Co., supra.* Implicit in the definition of owner is the ability to control how, when, where and by whom the vehicle will be used. Dr. Schneider clearly testified that he had no such control. The only control Dr. Schneider could exercise would be repossession of the vehicle if and when his son defaulted on the loan. Until that time, he could not exercise any of the indicia of ownership which would be compatible with the contract of insurance USAA agreed to.

Petitioner urges us to adopt the interpretation of this contract offered by the dissenting opinion in the Court of Appeals. The dissent argued that USAA agreed to provide coverage to the vehicle. It views as determinative of this issue USAA's addition of the vehicle to the policy and asserts that USAA was *obliged* to add the vehicle. No such obligation existed. The dissent relies upon paragraph (c)(2) of the policy's definition of owned automobile. That section states that an owned vehicle is one which is *acquired* by the named insured during the policy period and the named insured notifies the company during the policy period.

Reliance on this provision merely shifts the dispute from the definition of owner to that of "acquired". The term means "to come into possession, control, or power of disposal of often by some uncertain or unspecified means". *Webster's Third New International Dictionary* 18 (1968). Thus, acquire has the same connotations of control and possession. Since Dr. Schneider had neither, no coverage existed.

The decision of the Court of Appeals is hereby affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE,

DIMMICK, and PEARSON, JJ., and HAMILTON, J. Pro Tem., concur.

Reconsideration denied December 13, 1983.