[Nos. 9640–8–III; 9861–3–III.   Division Three.   March 29, 1990.]

LESLIE C. GINGRICH, JR., ET AL, *Plaintiffs,* LESLIE C.
GINGRICH III, *Respondent,* v. UNIGARD SECURITY
INSURANCE COMPANY, *Appellant.*

*Karen Weaver,* for appellant.

*Blaine Gibson, McArdle, Dohn, Talbott, Simpson & Gibson, P.S.,* and *Daniel Peterson,* for respondent.

THOMPSON, J.—Unigard Security Insurance Company appeals summary judgment orders and a judgment requiring it to provide coverage to Leslie C. Gingrich III (Leslie III) under his parents' insurance policy. Leslie III cross–appeals the dismissal of his bad faith claim under the Consumer Protection Act, RCW 19.86. We affirm.

Leslie III was injured on September 13, 1987, as he was driving a 1965 Chevrolet pickup truck. Two days before the accident, Leslie III's father, Leslie C. Gingrich, Jr., had transferred title to the pickup to Leslie III, who lived with his parents on a farm near Sunnyside, Washington. Provisions of Unigard's insurance policy issued to Leslie III's parents excluded coverage for vehicles not owned by the

named insured. Unigard has denied coverage on the basis that Leslie III was the owner of the vehicle at the time of the accident.[1]

The Gingriches always maintained strict limits on use of their vehicles by their seven children. This rule of "self-preservation", as Darlene Gingrich called it, was especially pertinent in the case of 21–year–old Leslie III, her youngest child. Leslie III had a terrible driving record. First licensed to drive in 1983, he was involved in three accidents in as many years, one of which resulted in a negligent driving citation and license suspension. He had more speeding tickets than he could remember.

When the Gingriches first obtained the Unigard policy in 1985, Leslie III was not living with them. He moved frequently between his parents' home and the homes of other relatives in Western Washington. At the time of the accident here, Leslie III was living with his parents and working at a job in Sunnyside. Although his license had been reinstated in July 1987, he had no vehicle and his mother was driving him to and from work in her car.

The family at that time was under a great deal of stress. Mrs. Gingrich's daughter had been diagnosed as having cancer, and Leslie, Jr.'s job was uncertain. The Gingriches were unable to continue payments on the farm, and had

---

[1]Unigard's underinsured motorist endorsement provided: "This insurance does not apply to . . . [b]odily injury to you or any family member while occupying any vehicle owned by or available for regular use for you or any family member which is not a covered auto for liability insurance." As defined by the policy, Leslie III was a family member, but was not a named insured, and liability coverage was limited to vehicles owned by the named insured. Although the policy listed the 1965 Chevrolet pickup truck as a covered auto, Unigard contends here that at the time of the accident the truck was owned by Leslie III and the exclusion quoted above applies. Similarly, Unigard's personal injury protection endorsement contains the following exclusion: "We will not pay a family member for injury received while occupying an auto owned by that family member." In both cases, then, the issue of coverage turns on whether the pickup was owned by Leslie III or by Leslie, Jr.

decided to return it to the former owners.[2] Mrs. Gingrich's brother was scheduled for triple bypass heart surgery on September 14, 1987. She and Leslie, Jr., decided to drive to California to be with her brother.

Before leaving on the emergency trip, the Gingriches decided to transfer title to the pickup truck to Leslie III. Both parents and Leslie III said the reason for the transfer was so that Leslie III would have transportation to and from his job. Mrs. Gingrich explained:

> We wanted to make sure that if we were killed on that trip, which was entirely possible, that Leslie [III] would be protected, and that the law wouldn't come in and tie up everything and leave him on foot with nothing and no way to get to work.

Leslie III offered a similar explanation. His father testified:

> A. . . . I have always been told that if the vehicle was in another person's name then you are no longer held responsible.
>
> . . . .
>
> Q. So it's my understanding that you did not want to be responsible for your son's use of the vehicle while you were gone; is that right?
> A. Right.

Leslie III did not pay for the truck, and it was understood he would transfer the title back to his parents when they returned.

The Gingriches left for California on September 12. The accident happened early the next morning. On her return from California, Mrs. Gingrich reported the accident to Unigard and asked the company to delete the pickup from the policy, because it was a total loss. Unigard refunded the portion of the premium for the period from September 13[3] to the expiration of the policy, October 8, 1987.

---

[2]Shortly after the accident here, the Gingriches moved from the farm to Yakima.

[3]Mrs. Gingrich told the agent to delete the truck beginning the day after the accident, which would have been September 14, but the agent mistakenly deleted it as of September 13, the day of the accident.

Unigard denied coverage on the basis that the pickup was not owned by a named insured at the time of the accident. The claims manager found it unimportant that Leslie III had not paid for the vehicle, "since ownership can be obtained by gift".

The Gingriches[4] initiated this action for declaratory judgment and damages for alleged violation of the Consumer Protection Act, RCW 19.86. The court denied Unigard's motion for summary judgment on the coverage issue, but granted its motion on the consumer protection issue. The court then granted summary judgment against Unigard, ordering it to provide coverage. While these orders were being appealed, the trial court granted summary judgment against Unigard on the issue of personal injury protection (PIP) coverage, and entered a judgment against Unigard for PIP benefits. The appeal of this order and judgment has been consolidated with the earlier appeal.

The first issue is whether Unigard has raised a genuine issue of material fact so as to avoid summary judgment. Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). On review of a summary judgment order, the court takes the position of the trial court, and assumes facts most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972). The burden is on the moving party to show there is no genuine issue as to a fact that could influence the outcome at trial. *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Summary judgment should not be granted when the credibility of a material witness is at issue. *Balise v. Underwood*, 62 Wn.2d 195, 200, 381 P.2d 966 (1963); *Powell v. Viking Ins. Co.*, 44

---

[4]The complaint listed the parents as plaintiffs, in addition to Leslie III, but they later took a nonsuit.

Wn. App. 495, 503, 722 P.2d 1343 (1986). Summary judgment also may not be appropriate when material facts are particularly within the knowledge of the moving party. *Felsman v. Kessler,* 2 Wn. App. 493, 496–97, 468 P.2d 691, *review denied,* 78 Wn.2d 994 (1970).

Here, Unigard argues, the trial court relied on the averred fact the Gingriches intended that Leslie III would retransfer title to the truck back to them when they returned from California. Unigard contends the evidence presents a genuine dispute. It points to the deposition testimony of Mrs. Gingrich, who said the family was planning to move from the farm to Yakima, and she did not know what use they would have had for the pickup truck. Unigard contends this testimony raises an inference the Gingriches had no further use for the truck, that they planned to give it to Leslie III permanently after their move to Yakima, and that the sudden trip to California merely precipitated the transfer. No other evidence supports Unigard's argument. In fact, Leslie, Jr., testified in his deposition that, after the move to Yakima, he would have used the pickup for hunting trips or for hauling wood or other items.

Unigard's speculative argument has only the barest of support in the record. Although the evidence of intent is exclusively within the knowledge of the Gingriches, Unigard's attorney had a full opportunity to cross–examine them during their depositions. *See Felsman,* at 497; 4 L. Orland, Wash. Prac., *Rules of Practice* § 5658, at 427–28 (3d ed. 1983).

Moreover, Unigard points to nothing in the record that contradicts the Gingriches' testimony. Cases on which Unigard relies are distinguishable on this point. In *Balise,* at 200, for example, the witness' credibility was drawn into question by his abandonment of his workers' compensation claim, as well as by testimony indicating he feared losing his job. In *Hudesman v. Foley,* 73 Wn.2d 880, 890, 441 P.2d 532 (1968), the nonmoving party's "countervailing affidavits" presented contradictory evidence. The affidavit in

*Felsman,* at 498, was contradicted by a transcript of a coroner's inquest, as well as another affidavit. And in *Powell,* at 503, the witness's affidavit contradicted her original statement to the insurance investigator. Nothing in the record contradicts the Gingriches' repeated assertions that the title transfer was to be temporary. A summary judgment opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348, 1356 (1986). Based on the record before it, the trial court properly treated the fact the title transfer was temporary as beyond legitimate dispute.

Next, we address the issue whether the title transfer changed "ownership" of the vehicle. Unigard contends the concept of ownership is clear and unambiguous, and urges the court to give the policy language its plain, ordinary and popular meaning. *Toll Bridge Auth. v. Aetna Ins. Co.,* 54 Wn. App. 400, 407, 773 P.2d 906 (1989). The average person equates vehicle ownership with vehicle title, Unigard argues, and the Gingriches' title transfer also transferred ownership. Mr. Gingrich argues, conversely, that ownership is ambiguous, and the language must be construed in favor of the insured. *Farmers Ins. Co. v. U.S.F.&G. Co.,* 13 Wn. App. 836, 841, 537 P.2d 839 (1975).

Although *Farmers* did hold the word "owner" is ambiguous,[5] neither argument incorporates the approach of more recent Washington cases which view the matter as an issue of law. The intent of the insurance contract is to be determined from the language viewed in context with the

---

[5]The precise holding of *Farmers* has not been followed in Washington. In *Retail Store Employees Union, Local 1001 v. Washington Surveying & Rating Bur.,* 87 Wn.2d 887, 896–97, 558 P.2d 215 (1976), for example, the court in a different context focused on the following language in *Farmers,* at 841:

The term ["owner"] is . . . a nomen generalissimum and its meaning should be gathered from the context in which it is used. The term may have many meanings depending upon the circumstances in which it is used.

(Footnote omitted.)

factual circumstances. *See Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 407, 670 P.2d 267 (1983); *Allstate Ins. Co. v. Neel,* 25 Wn. App. 722, 724, 612 P.2d 6 (1980).

One principle that appears most clearly from cases cited by both parties is that vehicle title is only marginally helpful in determining ownership for insurance purposes. In both *Kelly* and *Neel,* for example, parents were listed as owners on the titles, but were held not to be owners under their insurance policies. *See also Sowa v. National Indem. Co.,* 102 Wn.2d 571, 576, 688 P.2d 865 (1984) (seller, who "had surrendered all indicia of ownership except the legal title . . .", held not to have ownership interest); *Beatty v. Western Pac. Ins. Co.,* 74 Wn.2d 530, 445 P.2d 325 (1968) (seller, who retained title certificate until final payment, was not owner).

Of more importance in this analysis are other indicia of ownership, including possession, *Neel,* at 725, and right of control, *Kelly,* at 407. It is undisputed here that Leslie III had possession of the pickup. He also had some right of control, although his control was not complete, because under his agreement with his parents he could not sell the vehicle or otherwise dispose of it.

This examination of the indicia of ownership thus is inconclusive. However, another important consideration is the nature of the transaction by which these indicia of ownership are acquired. In *Sowa* and *Beatty,* for example, the ownership changed because of the *sales* of the vehicles. And in *Kelly* and *Neel,* the retention of *security interests* in the vehicles failed to establish ownership.

Here, there was no sale. The transaction also was not a gift, in view of the intent to have the title returned to the parents after their trip to California. *See Sinclair v. Fleischman,* 54 Wn. App. 204, 207, 773 P.2d 101, *review denied,* 113 Wn.2d 1032 (1989).

The transfer was a bailment, which "arises generally when personalty is delivered to another for some particular purpose with an express or implied contract to redeliver

when the purpose has been fulfilled". *Freeman v. Metro Transmission, Inc.,* 12 Wn. App. 930, 932, 533 P.2d 130 (1975). Constructive delivery may be accomplished by transfer of title. *Freeman,* at 933 (citing Annot., 1 A.L.R. 394, at 397 (1919)). In general, a bailor is not liable to third parties for the bailee's negligence, *see Blackburn v. Evergreen Chrysler Plymouth,* 53 Wn. App. 146, 147–48, 765 P.2d 922, *review denied,* 112 Wn.2d 1015 (1989), a principle that satisfies Leslie, Jr.'s desire not to be held responsible for his son's actions.

With a bailment, ownership of the property remains with the bailor. *International Harvester Co. v. Bank of Cal., N.A.,* 29 Wn. App. 905, 913, 632 P.2d 522 (1981); 8 C.J.S. *Bailments* § 28 (1988). Ownership did not change in this case, and the Unigard policy should provide coverage for Leslie III's injuries.

Unigard argues, however, that this conclusion would unfairly require it to assume a much greater risk than it originally agreed. It refers to evidence that if Unigard had known of Leslie III's presence in the home, it would have issued a named driver exclusion or might have declined to renew the parents' policy. This implication the Gingriches committed fraud in failing to notify Unigard their son had returned to their home is unsupported by the record. It is particularly unfair in light of the evidence that Leslie III's driver's license only recently had been reinstated, that his parents maintained strict control over his use of their vehicles, and that Mrs. Gingrich had discussed her son's driving record with Unigard's agent.

Unigard concedes the Gingriches could have simply given the keys to Leslie III, without transferring title, and coverage would have been uncontested. Indeed, coverage would have been provided if the Gingriches had loaned their car to *anyone else.* This was a risk Unigard expressly assumed in agreeing to provide insurance. By simply transferring title to the vehicle, without changing ownership, the Gingriches did not increase Unigard's risk.

Unigard also argues that Leslie, Jr., was unwilling to assume the risk of liability for his son's driving, implying it also should not be held responsible. This concept of fault is irrelevant in the context of underinsured motorist protection.[6] Furthermore, a person buys insurance precisely to avoid the consequences of liability. Unigard has accepted a premium to insure the Gingriches against the very risk at issue in this case. The trial court properly ordered Unigard to provide coverage.

Last, we consider the issue raised on cross appeal, regarding the court's dismissal of the Consumer Protection Act claim. An insurer's breach of its duty of good faith, RCW 48.01.030, constitutes a per se violation of the Consumer Protection Act, RCW 19.86.020. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 359, 581 P.2d 1349 (1978). The remedy includes costs, attorney fees and treble damages. RCW 19.86.090. An insurer breaches its duty by acting without reasonable justification in handling an insured's claims. *Villella v. Public Employees Mut. Ins. Co.,* 106 Wn.2d 806, 821, 725 P.2d 957 (1986). Even if incorrect, a reasonable denial of coverage by the insurer is not a violation. *Villella,* at 821.

Mr. Gingrich contends whether the insurer acted with reasonable justification is a question of fact, for which summary judgment is inappropriate. He relies on *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig,* 54 Wn. App. 558, 774 P.2d 1230, *review granted,* 113 Wn.2d 1016 (1989) and *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.,* 37 Wn. App. 1, 680 P.2d 409 (1984). Neither case involved summary judgment, and the issue in each was whether the evidence was sufficient to support the jury's verdict. More importantly, the *factual* issue presented in each case was whether the insurer was reasonably justified,

---

[6]Even if fault were relevant here, the record indicates Leslie III had collected policy limits of $25,000 from the insurer of the other vehicle involved in the accident.

based on the evidence available to it, in concluding its insured had committed arson.

Here, by contrast, the dispute involved interpretation of the language of the insurance policy. Interpretation of insurance policies is a matter of law. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). As there was no genuine issue as to a material fact in this case, the court properly granted summary judgment. CR 56(c); *Wilson v. Steinbach, supra; Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., supra.*

Mr. Gingrich argues Unigard's denial of coverage was based on its conclusion the Gingriches had made a gift of the vehicle to Leslie III, a conclusion for which there was no factual support in the record or in Unigard's files. However, Unigard's position consistently has been that because Leslie III had title to the pickup, he was the owner for purposes of the policy exclusions. This was a legal dispute involving interpretation of the policy language. The court properly made its determination on summary judgment.

The court's decision is fully justified. Unigard's position was not unreasonable, frivolous or untenable. *See Transcontinental Ins. Co.,* at 470–71 (citing *Felice v. St. Paul Fire & Marine Ins. Co.,* 42 Wn. App. 352, 361, 711 P.2d 1066 (1985), *review denied,* 105 Wn.2d 1014 (1986)).

We affirm the decision of the trial court.

GREEN, A.C.J., and SHIELDS, J., concur.