[Civ. No. 1451. First Appellate District.—February 27, 1915.]

IRENE SABIN, Appellant, v. S. M. SMITH, Respondent.

ACTION FOR DAMAGES—KILLING OF DOG—RIGHT TO DEFEND POULTRY—CONSTRUCTION OF SECTION 3341 CIVIL CODE.—The contention that the legislature, by specifying in the second subdivision of section 3341 of the Civil Code the words "sheep, angora goats and cashmere goats," intended to and did thereby exclude poultry from the enumeration of animals for the worrying or killing of which a dog might be destroyed, cannot be maintained.

ID.—PROOF—KNOWLEDGE OF VICIOUSNESS OF ANIMAL—RIGHT TO DESTROY DOG—PUBLIC NUISANCE.—The first subdivision of section 3341 of the Civil Code, providing for the prosecution of actions, simply dispenses with the proof of knowledge on the part of the owner of the vicious habits of his animal, a burden that was imposed in a certain character of actions against such owners at the common law; and the second subdivision authorizes any person to destroy as a public nuisance any dog found in any place outside the premises of the owner, worrying or killing sheep or goats, whether such sheep or goats belong to the person killing the dog or not—a right that did not exist at the common law.

ID.—RIGHT TO DEFEND FOWLS—COMMON LAW.—The natural right has always existed in one to defend his fowls upon his own premises from the attack of trespassing dogs, and there is nothing contained in either subdivision of section 3341 of the Civil Code, which in any way limits or takes away this right. The section was not intended to, nor does it, abridge the common law right of a person to defend his domestic animals against the attack of dogs, or to kill such dogs in circumstances that warrant the belief that his property is in peril.

ID.—RELATIVE VALUE OF DOG TO PROPERTY INJURED—RIGHT TO KILL NOT AFFECTED BY.—The right to kill a dog found trespassing and endangering property is not affected by the relative value of the dog and the property being injured; and the contention that because the dog killed was possessed of a pedigree and had a greater relative value than the fowls injured by it, the killing was unwarranted, cannot be maintained.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. P. F. Gosbey, Judge.

The facts are stated in the opinion of the court.

Schwartz & Powell, for Appellant.

Rogers, Bloomingdale & Free, for Respondent.

KERRIGAN, J.—The plaintiff was the owner of a Russian wolf hound which was killed by the defendant. This action was brought to recover the sum of three hundred and fifty dollars, the alleged value of the hound, and for the further sum of one thousand dollars as exemplary damages.

It is the claim of the plaintiff that the killing was wrongful, unlawful, and malicious. Defendant, answering, denies that his act was malicious, and alleged that the hound in question was one of a pack of savage and ferocious dogs which was a common and a public nuisance, and at the time of the killing the said pack had trespassed upon the defendant's premises, entered an inclosure set apart for his poultry, and chased and worried such poultry; that the said dogs were driven away, but shortly thereafter the dog mentioned in the complaint and another member of the pack returned, and renewed their attack upon the defendant's poultry, pulling the feathers therefrom and mutilating one of the chickens so that it had to be killed; that thereupon the defendant, in order to protect his poultry, shot at said dogs to drive them away and prevent further depredations upon his flock, and in so doing killed one of the dogs.

The evidence without conflict supports the defendant's contention; and the trial court found that under these circumstances the defendant was justified in killing said dog, and accordingly gave judgment in his favor.

Plaintiff does not deny the truth of the evidence presented by the defendant, but insists that such facts do not constitute a defense to her action, and assigns the rulings of the trial court in the admission of this testimony as error requiring a reversal of the judgment.

It is her contention that section 3341 of the Civil Code is in itself conclusive upon the subject; and that the obvious intention of the legislature as revealed by the language of the act was to omit poultry in the enumeration of animals for the worrying, wounding, or killing of which a dog might be killed, and to confine the owner of such poultry to the more tardy action for damages at law.

The section invoked by the plaintiff reads as follows:

"The owner, possessor, or harborer of any dog or other animal, that shall kill, worry, or wound any sheep, angora goat, or cashmere goat, or poultry, shall be liable to the owner of

the same for the damages and costs of suit, to be recovered in any court of competent jurisdiction:

1. In the prosecution of actions under the provisions of this chapter, it shall not be necessary for the plaintiff to show that the owner, possessor, or harborer of such dog or other animal, had knowledge of the fact that such dog or other animal would kill, wound, or worry sheep, goats, or poultry.

2. Any person on finding any dog or dogs, or other animal, not on the premises of the owner or possessor of such dog or dogs, or other animal, worrying, wounding, or killing any sheep, angora or cashmere goats, may, at the time of finding such dog or dogs, or other animal, kill the same, and the owner or owners thereof shall sustain no action for damages against any person so killing such dog or dogs, or other animal."

In support of her contention it is the claim of the plaintiff that the legislature, by specifying in the second subdivision of the section the words "sheep, angora goats and cashmere goats," intended to and did thereby exclude poultry from the enumeration of animals for the worrying or killing of which a dog might be destroyed.

This contention cannot be maintained. The first subdivision of the section providing for the prosecution of actions, simply dispenses with the proof of knowledge on the part of the owner of the vicious habits of his animal, a burden that was imposed in a certain character of actions against such owners at the common law. The second subdivision authorizes any person to destroy as a public nuisance any dog found in any place outside the premises of the owner, worrying or killing sheep or goats, whether such sheep or goats belonged to the person killing the dog or not—a right that did not exist at the common law. The natural right has always existed in one to defend his fowls upon his own premises from the attack of trespassing dogs (2 Cooley on Torts, 3d ed., 702). There is nothing contained in either of the subdivisions of the statute which in any way limits or takes away this right. The section was not intended to, nor does it, abridge the common law right of a person to defend his domestic animals against the attacks of dogs, or to kill such dogs when the circumstances warrant the belief that his property is in peril. At the common law the justification for the killing was complete when it appeared that the dog was engaged in worrying and terrify-

ing domestic animals in their own lawful inclosure, and where the necessity of the killing in order to protect the property was apparent.

The argument of counsel that dogs were not property at the common law and were afforded small consideration, and that the legislature here invoked was enacted for their further protection, is without merit. While the *status* of the dog before the law is *sui generis,* and in the early common law the property in them was of an imperfect and peculiar character, still they were considered property for many purposes. True, they were not the subject of larceny; but this was for the reason that such crime was punishable by death, and it was not considered proper that a man should die for the larceny of a dog. Except in the case of larceny a dog was property at the common law, and the owner had his remedy by civil action for an injury to or loss or destruction of the same. (See the exhaustive note on property in dogs in *Hamby* v. *Samson,* 67 Am. St. Rep. 285.)

In some states attempts have been made to recognize a full and complete property in dogs; but in those jurisdictions the reasons given for such recognition are more or less sentimental. From earliest childhood we have listened to the tales of the faithfulness of dogs as portrayed in fable and song; and their fidelity has ever made them the constant companions of men. Nor are we wanting in champions for their defense among our brother judges, for we see them referred to as being responsible for the changing of modern history, and the preservers of exhausted travelers caught in the storms which sweep over the crests and sides of the Alps (*Mullaly* v. *People,* 86 N. Y. 365). Again we find Wilkes, J., in *Citizens' Rapid Transit Co.* v. *Dew,* 100 Tenn. 318, [66 Am. St. Rep. 754, 40 L. R. A. 518, 45 S. W. 790], describing them as "the negro's associate and often his only property; the poor man's friend and the rich man's companion; the protection of women and children, hearthstones and hen-roosts."

While not attempting to detract nor in any manner minimize the loyal traits possessed by this favorite animal, it remains the fact that although under our modern law the owner of a dog has a property in it not recognized by the common law, still by the American courts the dog is held to less legal regard and protection than more harmless and useful domestic animals, and is subject to a more strict control and regula-

tion as to the mode of its keeping and use. Persons engaged in the raising of sheep or goats are especially subject to loss from the predatory and wolfish instincts of dogs; and for this reason statutes for their special protection similar to our own have been enacted in most of the states regulating this nuisance under the exercise of the police power. Most of these states have seen proper to place all sheep-killing dogs in the category of public nuisances, which the owner of sheep may abate summarily. Those statutes however are not intended to abridge the common law, but rather to extend the right to destroy an animal for the protection of property. The code section above referred to does not confer upon the owner of sheep or fowls any power to kill a dog that such owner did not possess at common law, nor does it in any manner abridge his right. On the contrary, the section expressly provides cumulative remedies that did not ordinarily generally exist. By providing for such cumulative remedies with reference to sheep, the statute cannot be said to deprive the owner of fowls of the right to destroy a dog that is engaged in worrying and killing them while in their own lawful inclosure, and where the necessity for the killing is apparent, in order to protect such fowls.

The claim that the dog killed was possessed of a pedigree and had a greater relative value than the fowls injured, and that therefore the killing was unwarranted, is without merit. The right to kill a dog found trespassing and endangering property is not affected by the relative value of the dog and the property being injured (*Simmonds* v. *Holmes,* 61 Conn. 1, [15 L. R. A. 253, 23 Atl. 702]). Besides, it does not appear from the record that the defendant knew that the hound was possessed of a pedigree, nor does it show the number of chickens owned by defendant and subjected to the dog's ferocity. It can hardly be contended that the defendant was bound to stand by and mentally calculate the value of the chickens destroyed, and await action until such value approximately equaled that of the dog.

For the reasons indicated the judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.