[No. 19877. *En Banc.* January 7, 1927.]

JOE DROLET, *Appellant,* v. O. V. ARMSTRONG *et al.,*
Respondents.[1]

[1] ANIMALS (19)—TRESPASSING—DOGS KILLING CHICKENS. There
was reasonable and apparent necessity for the killing of two
dogs each of which, at the time it was shot, was engaged in
killing chickens recently or immediately following similar tres-
pass at the same place, the ownership of the dogs being un-
known.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered September 5,
1925, upon findings in favor of the defendants, in an
action for damages for killing trespassing animals.
Affirmed.

*Williamson & La Berge,* for appellant.

*Grady & Velikanje,* for respondents.

MITCHELL, J.—This action was brought by Joe Drolet
against O. V. Armstrong and his wife to recover dam-
ages for the killing of two bird dogs. Upon the trial
of the case without a jury, findings and judgment were
for the defendants. Plaintiff has appealed. Herein-
after O. V. Armstrong will be spoken of as the re-
spondent.

The respondent and his family reside on a ranch two
miles from the city of Yakima. Early one morning
upon his return from Seattle, his wife informed him
that the chickens had been squawking ever since day-
light. About that time he heard such noises in the
chicken yard, whereupon he and his son went out and,
as they passed over and along a gravel walkway to-
wards the chicken yard, the two dogs ran away, leaving
two hens, "one dead, the other kicking its last. The

[1]Reported in 252 Pac. 96.

dogs had killed them.'' About half an hour later the dogs returned and attacked the chickens. The respondent and his son ran out, the son taking a gun by directions of the respondent. Each of the dogs, seventy-five or eighty feet away, was engaged in killing a chicken. One of the dogs raised its head, dropping out of his mouth a chicken that was dying, as the boy killed the dog with a shot gun. The chicken attacked by the other dog had not been killed, but its feathers were all pulled off and it was wounded and bleeding. The chicken was dropped in that condition by the dog that ran away as the gun was fired at the dog killed. About half an hour later, the remaining dog came hurriedly across the premises and thence ran down the road nearby. The next morning at breakfast time, this dog attacked the chickens again. Respondent and his son, the latter taking the gun, ran out as the chickens were being killed by the dog. It had killed seven or eight young chickens of a brood of thirteen, ''not quite as large as Hungarian pheasants,'' and was tearing the mother of the flock to pieces as the boy shot and killed that dog. These things occurred on the premises of the respondent. He testified that, when the dogs first noticed them, the dogs hurried away. There was no chance to catch them. He did not know the dogs nor who owned them. Shortly after the dogs were killed, the respondent, upon noticing an advertisement describing dogs lost by the appellant, advised the appellant of his killing such dogs that later were identified by the appellant.

The fact, not within the knowledge of the respondent at the time, that these same dogs had killed other domestic fowls in the neighborhood at about that time may not be considered of importance in deciding the case.

[1] Under well considered cases and in all good reason, a person has a natural right to defend and

protect his domestic fowls and, in doing so, may kill dogs engaged in injuring and destroying them, if there is reasonable and apparent necessity therefor, to be determined by the trier of the facts.

In the case of *State v. Burk,* 114 Wash. 370, 195 Pac. 16, 21 A. L. R. 193, we reversed a judgment of conviction for the killing of trespassing elk, protected by the game laws of the state, for the reason that the trial court refused to submit to the jury the defendant's justification testimony that the elk were killed while engaged in damaging the defendant's property. In that case it was said:

"Doubtless, circumstances might arise where the court might be justified in holding, as a matter of law, that the testimony failed to show such reasonable necessity, such as killing of elk solely because of past damage done by them; or because of a simple trespass without any material damage done or reasonably threatened. But here, according to the testimony offered, these same elk had recently several times been trespassing and had done actual and material damage; several times appellant had driven them from his premises; at the time he shot, they were in his corn, eating it and knocking it down, and trampling on his other crops. It cannot be said that this testimony was, as a matter of law, insufficient. It was for the jury to determine its sufficiency. Generally, all questions of fact are for the jury."

So in the present case. The dogs were wild at the time and hurried away from the scene of destruction upon the approach of the owner of the property destroyed who was a stranger to the dogs; each dog had very recently committed prior trespasses and done actual and substantial damage; and each at the time it was shot was engaged in killing chickens.

In *State v. Burk, supra,* there is a review of a number of authorities upon this question as it arose in both

criminal cases and actions at law, where the animal killed while trespassing was either a domestic animal or one protected by the game laws of the state, which discuss the applicable rule and the reason for it. The sum total of those cases and others they in turn refer to is fairly expressed by a quotation in that case from 2 Cyc. 415, as follows:

"One may kill a vicious animal in the necessary defense of himself or the members of his household, or under circumstances which indicate danger that property will be injured or destroyed unless the aggressor is killed, but it seems that such killing is justified only when the animal is actually doing injury. . . . Every person has a natural right to defend and protect his animate property—as cattle, stock and fowls— from injury or destruction by dogs, and in pursuance of that object may kill dogs engaged in doing injury to such animals owned by him; but there must exist an apparent necessity for such a course, and the destruction of the dog must be reasonably necessary under the circumstances. . . . The right to kill dogs, in order to protect inanimate property, is based upon the same considerations."

Other authorities to the same effect are *Collinson v. Wier*, 91 Misc. 501, 154 N. Y. Sup. 951; *Sabin v. Smith*, 26 Cal. App. 676, 147 Pac. 1180; 3 C. J. 155, 156; 1 R. C. L. 1126.

Considering the facts in this case, in view of the well established rule of law, it must be held that a preponderance of the evidence sustains the finding that, as a matter of fact, there was reasonable and apparent necessity for killing the dogs, each of which at the time it was shot being engaged in killing chickens recently or immediately following similar trespasses at the same place.

Judgment affirmed.

TOLMAN, C. J., MAIN, PARKER, and ASKREN, JJ., concur.

FULLERTON, J. (concurring)—While I concur in the conclusion reached by Judge Mitchell, I do so for a somewhat different reason than he has given.

Dogs, as I understand their legal aspect with respect to the right of property their owners have in them, are not animals either *ferae naturae* or *domitae naturae*, but occupy a place somewhat intermediate between the two. In other words, while a property right is recognized in dogs, it is a property right of a base and inferior kind, not that absolute and superior right of property an owner has in animals necessary to the subsistence of man, such as horses, cattle, sheep, and the like. Being animals of this inferior sort, they are subject to the police power of the state, and it is within the constitutional power of the legislature to prescribe the terms and conditions under which they may be kept by their owners, and under what circumstances they may be impounded or destroyed by persons other than their owners.

Our legislature has enacted a law upon the subject. It has provided (Rem. Comp. Stat., § 3107) [P. C. § 1986c]:

"It shall be lawful for any person who shall see any dog chasing, biting, injuring or killing any sheep, swine or other domestic animal outside of the enclosure of the owner or keeper of such dog . . . to kill such dog, . . ."

Domestic fowls are "animals" within the meaning of such a statute. *Holcomb v. Van Zylen,* 174 Mich. 274, 140 N. W. 521; *McPherson v. James,* 69 Ill. App. 337; *State v. Bruner,* 111 Ind. 98, 12 N. E. 103; *People v. Klock,* 48 Hun 275; *Huber v. Mohn,* 37 N. J. Eq. 432.

In this instance, the evidence discloses that the dogs were killed while outside of the inclosure of the owner and while in the act of killing the chickens of the respondent on the respondent's premises. It was law-

ful, therefore, because of the statute, for the respondent to kill the dogs, and, it being so lawful, he is not liable to answer in damages for the value of the dogs.

In the absence of a statute authorizing it, I am doubtful whether it is always lawful to kill a dog merely because it is found trespassing on the property of another person than its owner, even though the trespass may cause some actual damage. There is a sense of proportion in things, recognized by law, and it will hardly do to say that a valuable dog may be killed for an inconsequential injury, or for an injury greatly less, measured by a money value, than the value of the dog, unless the killing is specially authorized by statute. No one can rightfully contend that it is lawful to kill a horse, a cow, or a band of sheep merely because it may be found trespassing upon and destroying the property of persons other than its owner. In my opinion, notwithstanding the limited right of property the owner has in a dog, a dog stands on the same plane as the animals named with respect to the right to kill it, and can be killed, in the absence of statutory authorization, when found trespassing, only under circumstances which would justify the killing of any domestic animal. For these reasons, I do not think the judgment in this cause can rest on any general rule of law, but I feel that it can safely rest on the statute cited.

BRIDGES, J., concurs with FULLERTON, J.