STATE *v.* W. L. SYLVESTER.

October Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 4, 1941.

· *Richard E. Gale* for respondent.

*George L. Daley,* State's Attorney, for the State.

SHERBURNE, J.   This is a prosecution under the provisions of P. L. 8570 for, openly and without intended secrecy, wilfully and maliciously injuring and destroying a dog, the property of another, by shooting, and comes here upon respondent's exceptions after verdict and judgment of guilty and sentence thereon.

Because of the nature of the charge and the questions raised by respondent's motion for a directed verdict at the close of all the evidence upon the grounds that the evidence, taken in the light most favorable to the State, fails to show that the act complained of was done wilfully and maliciously, and fails to show any express malice toward the owner of the dog, and that the evidence shows that the respondent committed the act complained of when acting in the defense of his property, and that no malice may be implied under such circumstances, to the overruling of which the respondent excepted, we shall set forth in considerable detail the facts shown in evidence, viewed most favorably to the State in cases of conflict between the evidence produced by the State and that produced by the respondent.   We do not understand that the State makes any claim that the respondent shot the dog other than at the very instant it was attacking one of the respondent's hens.

The respondent is a farmer and keeps a few hens.   About five years ago he lost eight hens, which from what he learned about a year later he thought were killed by dogs.   About a year ago his hens were chased by dogs and he drove them off without damage.   About a week prior to the date of the alleged offense the respondent found that one of his hens had been killed, and upon com-

plaint to a selectman the loss was found to have been caused by a dog and he was paid for the damage. On the day here in question the respondent went to his barn at about 4:30 P.M., and on arriving there heard a commotion among his hens, and without looking to see what caused the disturbance he immediately returned to his house and got a shot gun and two shells loaded with BB shot and loaded his gun with one of them. Then he went through the barn and out toward the hen house, where he observed the ground cluttered with fresh feathers and then caught sight of two hens running in a southerly direction, one of which had the feathers pretty much torn off her back and had a bloody back, while the other, although having had some feathers pulled out, was apparently not seriously injured. As he passed the corner of the hen house he saw a hen with slim bloody neck and no feathers on it running as fast as she could toward an angle in the buildings, and pursued by two dogs, one of which was tight up to the hen and biting at it with a few feathers flying from his teeth, at which he shot as quick as he could when about 70 feet away. Then both dogs stopped and he reloaded his gun and waited to see what would happen. Then the rear dog ran away toward the highway, while the dog he had shot at trotted and walked away about 150 feet toward the Vinton premises and sat down in the grass and looked at him. While he was getting his frightened hens into the henhouse he occasionally observed the dog and noticed that he was lying flat on the ground without moving, and he thought he was dead. Right after he had caught one of his hens that had run away, and before attending to the others, he called the house and office of Mr. Stafford, one of the selectmen, and left word for him to call when he came in. Later Stafford called and was told about the hens and the shooting of the dog and was asked to come up right away, but he did not get around to come until about 6 P.M. Stafford as a witness for the State testified to seeing three hens that had been chewed up and had more than half of their feathers pulled out, and that two were in particularly bad shape, one of these had both sides of its neck torn off, feathers, skin and all, and the other was torn on the back by teeth dragged through the skin. Stafford went to where the dog was and at first it lay still, apparently dead, then it moved its head a little. The respondent's buildings are about 700 feet from the Vinton house, and he told Stafford that he

thought it was Vinton's dog, and at Stafford's suggestion they went to see the Vintons. While there Mrs. Vinton paid for the damages to the hens and inquired where the dog was. The dog was then taken to a veterinarian and soon died. The next day Mr. Vinton stopped when passing respondent's house and criticised him for shooting the dog and the respondent told him that he would shoot any dog that he found bothering his chickens. The dog was a cocker spaniel and worth some over $25.00 prior to chasing the hens. It was duly licensed and wore a properly marked collar. There was no evidence or claim of any previous hostility or bad feeling between the respondent and the Vintons or their dog.

P. L. 8570 provides a penalty where a person "wilfully and maliciously" injures or destroys certain property. The words "wilfully and maliciously" as here used are to be construed in the same manner that they have been construed in other criminal statutes. In *State* v. *Muzzy,* 87 Vt. 267, 88 Atl. 895, a prosecution under P. S. 5815, now P. L. 8506, for wilfully and maliciously killing a heifer of another, it was held that the word "wilfully" as there used means intentionally and by design, and that the word "maliciously" as there used has a darker meaning and requires that, to the establishment of the crime, there should be found in addition a deliberate and evil intention on the part of the respondent to wrong and injure the owner of the heifer by the destruction of his property in wanton and malevolent defiance of the rights of individual ownership. See, also, *Town of Fletcher* v. *Kezer,* 73 Vt. 70, 50 Atl. 558, cited in *State* v. *Muzzy, supra,* where these words as used in V. S. 5007, a criminal statute relative to injuring a fence about a burial ground, are construed.

In order to determine whether the respondent shot the dog both wilfully and maliciously it is necessary to determine what right he had to protect his property. P. L. 1234 declares that "So much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be law in this state and courts shall take notice thereof and govern themselves accordingly." See *Whiting Co. et al.* v. *City of Burlington,* 106 Vt. 446, 458, 175 Atl. 35, and cases cited. At common law the owner of a domestic animal or fowl which is placed in jeopardy by the attack of a dog

has the right to kill the dog for the protection of his property. *Nesbett* v. *Wilbur,* 177 Mass. 200, 58 N. E. 586; *State* v. *Smith,* 156 N. C. 628, 72 S. E. 321, 36 L. R. A. (N. S.) 910; *Baker* v. *Howard County Hunt,* 171 Md. 159, 188 Atl. 223, 107 A. L. R. 1312; *Skog* v. *King,* 214 Wis. 591, 254 N. W. 354; *Sabin* v. *Smith,* 26 Cal. App. 676, 147 Pac. 1180; *Brauer* v. *English,* 21 Mo. App. 490; *Drolet* v. *Armstrong,* 141 Wash. 654, 252 Pac. 96; *Breedlove* v. *Hardy,* 132 Va. 11, 110 S. E. ,358; *O'Leary* v. *Wangensteen,* 175 Minn. 368, 221 N. W. 430. See, also, *Aldrich* v. *Wright,* 53 N. H. 398, 16 Am. Rep. 339, where the old English cases are reviewed.

P. L. 8280 and 8283 provide for the appraisal and payment of damages to a person who suffers loss by the worrying, maiming or killing of his fowls and domestic animals by dogs, and P. L. 8281 provides that in such cases of injury to domestic animals a selectman shall make inquiry, and when he has identified the dog which did the damage shall issue his warrant to a constable or police officer commanding him forthwith to kill the dog. P. L. 8291 authorizes a person to kill a dog, without the enclosure of its owner or keeper, that suddenly assaults him while he is peaceably walking or riding, or a dog found worrying, wounding or killing sheep. The State contends that these provisions of the statute have repealed the foregoing right at common law to kill a dog in defense of property.

■■ The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. *Dewey* v. *St. Albans Trust Co.,* 57 Vt. 332, 338; *State* v. *Central Vt. Ry. Co.,* 81 Vt. 459, 462, 71 Atl. 193, 21 L. R. A. (N. S.) 949; *State* v. *Hildreth,* 82 Vt. 382, 384, 74 Atl. 71, 24 L. R. A. (N. S.) 551, 137 Am. St. Rep. 1022, 18 Ann. Cas. 661; *Whiting Co.* v. *City of Burlington, supra,* 106 Vt. at page 464. But the common law is impliedly repealed by ·a statute which is inconsistent therewith, or which undertakes to revise and cover the whole subject matter. *Whiting Co.* v. *City of Burlington, supra; State* v. *Stokes,* 54 Vt. 179.

■■ These statutes do not undertake to cover the whole subject matter, and in so far as they are more narrow than the common law, the common-law right continues as to cases outside their scope. *Nesbett* v. *Wilbur, supra; Skog* v. *King, supra; Sabin* v. *Smith, supra; O'Leary* v. *Wangensteen, supra.*

To warrant the killing of a dog for the protection of a domestic animal or fowl, the circumstances must be such as to create a reasonable belief that such killing is necessary to prevent injury to the animal or fowl. *Livermore* v. *Batchelder*, 141 Mass. 179, 5 N. E. 275; *State* v. *Smith, supra; Baker* v. *Howard County Hunt, supra; O'Leary* v. *Wangensteen, supra.* See, also, *McQuiggan* v. *Ladd et al.*, 79 Vt. 90, 105, 106, 64 Atl. 503, 14 L. R. A. (N. S.) 689.

The State makes the point that even under the common law the respondent was not justified in killing the dog because its value was greatly in excess of the value of the hen being injured. There seems to be a conflict of authority upon this point. See Annotations 10 A. L. R. 689-697 and 2 Am. Jur., Animals, § 96, where this point and the other matters relative to dogs referred to in this opinion are discussed. If relative values have any bearing upon a justification in a civil suit for damages, which we do not decide, they can only mean the relative values as they reasonably appeared to the respondent at the time he shot the dog. *McQuiggan* v. *Ladd et al., supra.*

Whether or not the respondent could, in a civil action for damages, justify the shooting of this dog, the question here is did he do so with the deliberate and evil intention to wrong and injure the owner of the dog by the destruction of his property in wanton and malevolent defiance of the rights of individual ownership. All that can be claimed here as to relative values is that he did not nicely weigh them. He may not have known whether this dog was a common cur or a pedigreed dog, and surely its value was not enhanced by what it had done on this occasion. Because he did not stop to weigh relative values does not show that he shot the dog maliciously. Nor does the fact that it may have been unnecessary to shoot the dog for the protection of his hens so show. Nor does his failure to promptly examine the dog and take steps to have its wounds treated. He had his own property to look after and thought the dog was dead. Nor does his remark to Mr. Vinton, made under provocation, that he would shoot any dog that he found bothering his chickens so show. He apparently thought he had a right to do so. The State makes much of his going into the house for his gun rather than immediately going out and trying to drive the dogs away when he heard the commotion among his hens. Grant-

ing that he got the gun for a purpose and that he intended to shoot whatever he found attacking his hens, it only shows that he shot wilfully but it does not show that he shot maliciously.

As said in *State* v. *Churchill*, 15 Idaho 645, 98 Pac. 853, 19 L. R. A. (N. S.) 835, 16 Ann. Cas. 947, a prosecution for the malicious killing, maiming or wounding of a dog, ''The defendant evidently used violence on the dogs through a desire and for the unmistakable purpose of removing them from his premises, and preventing them from annoying and disturbing his live stock. Whether he clearly and accurately measured the force he was using sufficiently to justify him in the eye of the civil law is beside the question here. * * * However liable a man may be in damages for injury to or destruction of trespassing dogs, it will not do to say that he can be brought to the bar of the criminal courts every time he protects his property against the depredations and annoyances of dogs, whether they be patrician or plebian dogs.''

The result is that there was error in the refusal to direct a verdict of not guilty. It is not necessary to consider the other questions raised.

*Judgment and sentence reversed. Judgment that the respondent is not guilty and he is discharged.*