[No. 22292-2-II.   Division Two.   January 7, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIS EUGENE LONG, JR., *Appellant*.

*Craig Andrew Ritchie* of *Ritchie & Strohmeyer,* for appellant.

*Christopher Shea, Prosecuting Attorney,* and *C. Danny Clem, Deputy,* for respondent.

HUNT, J. — Willis E. Long, Jr., appeals a first degree malicious mischief conviction for killing two hunting dogs. Long contends that: (1) he was entitled to shoot the dogs because they had chased a wild deer across his property; and (2) the prosecution should have charged him with a gross misdemeanor for killing pets rather than with felony destruction of property worth more than $1,500. Holding that the prosecutor had discretion to charge under either statute and finding no reversible error, we affirm.

## FACTS

William Acorn owned two Walker hound hunting dogs, Rowdy and Sparkle, valued between $5,000 and $8,000 each. On February 22, 1996, Acorn and his dogs were hunting bobcat near Long's property in Joyce. But Rowdy and Sparkle ran off; eventually they ran onto Joe Schmitt's property. Acorn asked and received Schmitt's permission to "go in and listen for them."

According to Long, the dogs chased a wild deer for a few moments across the edge of his property. The deer and dogs were not coming directly at Long but, rather, at an angle. Long knew the dogs were not wild but belonged to somebody; yet he did not attempt to scare them away or to capture them.[1] Instead, armed with a .22 caliber revolver, Long shot each dog three times from a distance of roughly 90 feet. He then "reloaded, and . . . went in and finished the dogs . . . [by shooting] them in the forehead . . . to put them out of misery." The deer continued unharmed on through a neighbor's property.

Acorn searched for his dogs without success. Later, he found the dogs' radio tracking collars on a tree stump,

---

[1]The record is unclear about whether Long was on his property when he shot the dogs.

roughly 800 feet from Long's property, and footprints leading from the stump back to Long's property. Acorn confronted Long, who at first denied knowing anything about Rowdy and Sparkle. Two days later, however, Long admitted to Acorn that he had killed the dogs.

On March 7, 1996, the State charged Long with a gross misdemeanor for willfully or recklessly killing "any" pet animal, *see* RCW 9.08.070(1)(c); he pleaded not guilty. At an April 30, 1996, hearing on Long's motion for a continuance, the deputy prosecuting attorney informed the court that: (1) the State and Long were in the midst of plea negotiations; (2) if the case proceeded to trial, the State would amend the charges to the "felony level"; and (3) if Long raised pretrial defenses to the current information, she would "amend to a felony." Because he had applied for a job with the federal government, Long apparently wished to avoid a felony charge.

On July 23, 1996, Long filed a *Knapstad* motion,[2] seeking dismissal of the pet killing charge. The prosecutor told the trial court and Long that the State would move to amend the information to substitute felony counts for the misdemeanor. On August 2, 1996, the trial court granted the State's motion to amend the information to include two counts[3] of first degree malicious mischief, RCW 9A.48.070, class B felonies. Long pleaded not guilty. In late November 1996, before trial, the two counts of felony malicious mischief were merged.

The trial ended with a hung jury. Long was re-tried in June 1997 and convicted as charged.

## ANALYSIS
### I. Crime Charged—Prosecutorial Discretion

■ Long argues that he should have been charged with a gross misdemeanor under the unlawful killing of a pet

---

[2]*State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986) (establishing procedures for pretrial motions to dismiss for insufficiency of the evidence).

[3]One count for each dog, valued at more than $1,500.

animal statute,[4] which more specifically deals with his killing two dogs, rather than with a class B felony under the first degree malicious mischief statute.[5]

> When, as here, conduct violates more than one criminal statute the government may generally elect which statute it wishes to charge. This is so even though one statute imposes felony penalties and the other merely imposes misdemeanor penalties. . . . However, two important qualifications to the rule are recognized. First, there must be no showing that the government discriminates against any class of defendants in electing which statute it will charge. . . . Second, [the legislature] must not have intended that the more specific statute repeal the more general statute.

*United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986) (citations omitted); *see also State v. Datin*, 45 Wn. App. 844, 845, 729 P.2d 61 (1986).

## A. Legislative Intent

Long first cites to a *former* version of the *second degree* malicious mischief statute that proscribed knowingly and maliciously damaging, destroying or injuring a "horse, mule, cow, heifer, bull, steer, swine, goat, or sheep which is the property of another." RCW 9A.48.080(c) (1992). Long contends that these livestock are typically worth more than $1,500 and, therefore, "it is not logical to believe that the legislature intended that [the first degree malicious mischief statute] was intended to cover malicious damage to a dog." But this statute was repealed in 1994, Laws of 1994, ch. 261, § 17, and Long has identified no legislative history to support his contention.

---

[4]RCW 9.08.070(1)(c) provides: "Any person who, with intent to deprive or defraud the owner thereof, . . . [w]illfully or recklessly kills or injures any pet animal, unless excused by law," shall be guilty of a gross misdemeanor and fined not less than five hundred dollars per pet animal.

[5]RCW 9A.48.070(1)(a) provides: "a person is guilty of malicious mischief in the first degree if he knowingly and maliciously . . . [c]auses physical damage to the property of another in an amount exceeding one thousand five hundred dollars."

■ Rather, contrary to Long's contention, neither the repealed second degree malicious mischief statute nor the pet killing gross misdemeanor statute precludes charging the more serious first degree malicious mischief felony for destroying an exceptionally valuable animal, worth in excess of $1,500, such as a race horse or a prize show dog.

## B. Concurrency

■ Where criminal conduct violates both a special and a more general statute, courts generally assume the Legislature intended that the accused be charged only under the special statute. *Datin*, 45 Wn. App. at 845-46. But this rule of statutory construction applies *only* if the statutes are concurrent. *Id. See State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984); *State v. Aitken*, 79 Wn. App. 890, 896, 905 P.2d 1235 (1995).

> [W]hen a general and a special statute are concurrent, the special statute applies, and the defendant may only be charged under the special statute. Statutes are deemed concurrent if the general statute will be violated in each instance in which the special statute has been violated. It is irrelevant that a special statute may contain additional elements not contained in the general statute.

*State v. Jendrey*, 46 Wn. App. 379, 381-82, 730 P.2d 1374 (1986) (citations omitted). In other words, "the special statute will supersede the general *only* '[s]o long as it is *not possible* to commit the special crime without also committing the general crime.'" *State v. Williams*, 62 Wn. App. 748, 753-54, 815 P.2d 825 (1991) (quoting *Shriner*, 101 Wn.2d at 583) (first emphasis added) (alteration in original). Such is not the case here.

■ The unlawful killing of a pet and the first degree malicious mischief statutes are not concurrent. Here, the general statute, first degree malicious mischief, is violated only when a pet killed is valued at more than $1,500. *See* RCW 9A.48.070(1)(a). But when a pet killed is valued at less than $1,500, only the "special" gross misdemeanor statute,

killing a pet animal, is violated.[6] *See* RCW 9.08.070(1)(c). Because, therefore, it is possible to commit the special crime without also committing the general crime, the two statutes are not concurrent and the prosecutor was not required to charge under the narrower pet-killing statute.[7]

## II. Defenses
## A. Wildlife Protection

Long suggests that he has a constitutional or common law right to protect wildlife on his property and, therefore, he is immune from criminal liability for killing Rowdy and Sparkle, who chased a deer. He contends that the trial court should have dismissed the case on this ground or at least should have instructed the jury and allowed him to argue this defense to the jury. The law does not support Long's legal theory.

■ We acknowledge, as Long asserts, that "he has a limited right in the wild game on his property to exclude all other persons from his . . . property for the purpose of hunting." Long cites a 1928 Attorney General Opinion:

> the land owner or lessee, by acquiring the land by purchase or lease, acquires a property *ratione soli*, i.e., "by reason of the soil," in the wild animals which maintain their colonies there. *This property is absolute as against trespassers, but not as against the state* which may license, regulate or prohibit the killing or sale of the animals.

Op. Att'y Gen. (May 11, 1928) 711-12 (second italics added) (citation omitted).

---

[6]*Cf. State v. Walker,* 75 Wn. App. 101, 106, 879 P.2d 957 (1994) (first degree theft and taking a motor vehicle without permission are not concurrent offenses because, "if a person intentionally takes without permission an automobile that is less than $1,500 in value, he or she cannot be charged with first degree theft").

[7]Nor is there an equal protection violation, as is the case where two statutes prescribe different degrees of penalties for the same crime. "[T]here is no equal protection violation when the crimes that the prosecuting attorney has the discretion to charge require proof of different elements." *State v. Leech,* 114 Wn.2d 700, 711, 790 P.2d 160 (1990). In addition to the different elements concerning value, first degree malicious mischief requires a mental state of knowledge and maliciousness; unlawful killing of a pet animal requires a mental state of willfulness or recklessness.

■ But Long's right to exclude trespassing hunters from his property does not create a corresponding right to kill hunting dogs momentarily crossing his property. *See* Op. Att'y Gen. 711-12; *Zanotti v. Bolles*, 80 Vt. 345, 67 A. 818 (1907). Moreover, although Long's right to game on his property is superior to that of trespassers, the State's property right to regulate wildlife is superior to Long's: "Wildlife is the property of the state." RCW 77.12.010. "Game is not a property right appurtenant to land. Game belongs to the State." *State v. Quigley*, 52 Wn.2d 234, 236, 324 P.2d 827 (1958). Long cannot successfully maintain that he killed Rowdy and Sparkle in defense of wildlife or of his property.[8]

### B. Nuisance Abatement

The Legislature has declared that a dog pursuing any game animal during the closed season is a public nuisance. RCW 77.16.100, *repealed by* LAWS OF 1998, ch. 190, § 124 (re-enacted by LAWS OF 1998, ch. 190, § 30, and codified at RCW 77.15.240). Clallam County also classifies a dog as a nuisance when it is "running at large within the unincorporated areas of the county" or when it "enters upon another person's property without the permission of that person having been given to the owner of the dog." CLALLAM COUNTY CODE 17.01.100(2) & (9).

Long contends that RCW 7.48.230 provides legal justification and, therefore, a cognizable defense for killing Rowdy and Sparkle: "Any person may abate a public nuisance which is *specially injurious to him* by removing, or if necessary, destroying the thing which constitutes the same, without committing a breach of the peace, or doing unnecessary injury." RCW 7.48.230 (emphasis added). But here,

---

[8]Long cites cases involving the protection of domestic animals, such as *Drolet v. Armstrong*, in which the Washington Supreme Court held that "a person has a natural right to defend and protect his domestic fowls and, in doing so, may kill dogs engaged in injuring and destroying them, if there is reasonable and apparent necessity therefor." 141 Wash. 654, 655-56, 252 P. 96 (1927); *see also* RCW 16.08.020. But such cases do not apply to killing dogs chasing State-owned wild animals, as contrasted with domestic farm animals.

Long has not shown that the dogs were "specially injurious *to him*"; at most, he has alleged that the dogs may have been potentially injurious to the State's deer. In either instance, Long has not shown that killing the dogs was justified.

Under the Clallam County Code, an animal control officer may impound a dog that is a nuisance. CLALLAM COUNTY CODE 17.01.110(1). But the ordinance does not allow: (1) nonanimal control officers to abate a nuisance; or (2) *anyone*, whether an animal control officer or not, to summarily kill dogs or to abate nuisance dogs other than by impoundment. Long's actions, thus, do not fall within either RCW 7.48.230 or the Clallam County dogcatcher ordinance. Accordingly, Long's nuisance abatement defense fails.

In sum, the trial court did not err in declining to allow Long to present unsupportable defenses to the jury or in denying Long's motion to dismiss.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG, A.C.J., and SEINFELD, J., concur.

Review denied at 140 Wn.2d 1025 (2000).